# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1832, AT CAMBRIDGE.

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ JUSTICES.
Hon. MARCUS MORTON, ⎭

---

## Ichabod Macomber et al. versus Levi Parker.

By a contract between H and L, the lessees of a brick-yard, and E, the latter agrees to make bricks in the brick-yard, to hire and board the workmen, to give in his time and services in making the bricks, and to pay a certain sum per thousand for the bricks made, as rent therefor; and H and L agree to attend to selling the bricks, purchasing all necessary materials for making them, collecting the bills &c., and after payment of all expenses, the parties agree to share the profit or loss, one half each; and H and L are to have power to retain the bricks or money collected, in their possession, to the amount of all sums of money, goods &c., which they may from time to time advance to E. *Held*, that the bricks made in pursuance of this contract were the joint property of the parties.

In order to show that E had no property in the bricks, evidence was offered, that under such contracts it is usual for the owner of the yard to retain all the property in his hands, and to account with the maker of the bricks for his share of the profits, after the sales are made and the proceeds collected; but this evidence was *held* to be inadmissible, the terms of the contract being clear and explicit on that point.

Where a quantity of goods bargained for at a certain rate is actually delivered, the sale is complete, notwithstanding the goods are to be counted, weighed or measured in order to ascertain the amount to be paid for them.

The lessee of a brick-yard and a brick-maker being joint owners of the bricks made in the yard, the former transferred his interest in the yard and in the bricks and delivered possession thereof to assignees, who thereupon appointed the brickmaker their

agent to sell the bricks. He accepted the agency and acted under it, and after wards he sold to the assignees all his interest in the bricks remaining in the yard. It was *held*, that an actual delivery was not necessary to complete this sale, as against creditors of the vendor, for the assignees were already in possession of the property.

REPLEVIN for three kilns of bricks attached by the defendant on several writs against Joseph Evans. Plea, property in Evans. Replication, property in the plaintiffs. Trial before *Shaw* C. J.

It was proved that Hunting and Lawrence had a certain brick-yard in Cambridge, originally leased by A. Binney to J. Wilson, who assigned the lease to Hunting & Lawrence

On the 1st of March 1829, the following agreement was made between Hunting & Lawrence on one part and Evans on the other :— " Memorandum of an agreement &c. showeth, that said Evans has agreed to make or cause to be made from eight to ten hundred thousand good merchantable brick in the brick-yard at Cambridge &c. ; said Evans agrees to hire the men and board to the best advantage, to perform the manufacturing of said brick, and said Evans agrees to give in his time and services in making said brick ; and said Hunting & Lawrence agree to attend to selling of brick, purchasing of wood and all necessary materials for the manufacturing, collecting the bills &c. to the best advantage, and after the brick are made, and the labor and board of the men are paid, and all materials and tools of every kind are paid for, and the said Evans paying to said Hunting & Lawrence sixty cents per thousand for each and every thousand brick made or clay sold, as rent therefor, then the parties agree to share the profits or loss, as the case may be, one half each ; said Evans agrees to pay every attention to have the brick made in the best manner and in good season for making brick ; said Hunting & Lawrence shall have full power to retain said Evans's part of the brick or money collected or debts due for brick &c., in their possession, to the amount of all sums of money now due from said Evans and such other sums of money, goods &c., as they may from time to time advance him ; all of which the parties agree to perform according to the true intent and meaning."

No lease of the yard was given to Evans, and Hunting testified that Hunting & Lawrence expected to secure to them

selves, by the foregoing contract, a lien on the bricks to be manufactured in pursuance thereof, for the payment of any balance that might be due them.

The plaintiffs offered to prove, that under such contracts for the manufacture of bricks, it is customary for the owners of yards to retain all in their hands and account with the makers of bricks for their share of the profits, after the sales are made and the proceeds collected. This evidence was rejected by the Court.

On the 3d of July 1829, Hunting & Lawrence stopped payment and assigned all their property, including the brick-yard and all their interest therein and property thereon, to the plaintiffs, for the benefit of the creditors of the assignors, and on the same day delivered possession of the yard and all the property thereon to the plaintiffs, in presence of Evans ; and the plaintiffs then and there appointed Evans their agent, by a writing as follows : — " You will please take the charge and care of all the property and effects in and about the brick-yard &c., the said property having been this day assigned to us &c., you will proceed to sell the same at retail until further orders from us, for cash only, and whenever $100 is received, you will deposit the same in the Branch bank to our credit. Please keep and render us an exact account of your doings herein."

Hunting & Lawrence made large advances for the yard in 1829. Evans as agent of the plaintiffs, thus appointed, sold bricks to divers persons.

On Friday, February 26, 1830, the plaintiffs put a stop to sales by Evans, and directed Hunting, who had been their agent in the business of the yard, to make a final settlement with Evans ; and Hunting and Evans thereupon looked over the statements and accounts and cast them up for that purpose.

Hunting testified that at this settlement Evans agreed to cart all the bricks ; the common bricks, at five shillings per thousand. No price was fixed for the faced bricks. Upon the settlement, the witness, in behalf of the assignees, agreed to take all the bricks at certain estimated prices. The assignees meant to take all the property and allow Evans his half in account. The bricks were estimated at 370 thousand, and at

the estimated prices amounted to $1830; the board &c. at $200; making $2030. Taking the whole to the account of the assignees and crediting Evans his part, there would still be a balance due to the assignees, which was to be paid in carting. It was agreed, that if the bricks overran the esti- mated number, the assignees should account to Evans, and if they fell short, he should account to them, for the difference. They were to be counted in the course of the ensuing week. It was agreed that this should be a definitive settlement, as Evans was not to take the yard again. Nothing remained but to count the bricks, and make the allowance on the one side or the other, if the number varied from the estimate. On cross-examination the witness testified, that at this settlement there was an express understanding with Evans, that the assignees were to take the bricks to their own account; it was a sale of his half. Evans stated expressly that the workmen had all been paid, and that he had paid all charges. Evans after this settlement carried one load of bricks to G. W. Blake. The assignees were to take Evans's half, as they owned one half before. The witness considered the bargain and sale complete, except that the bricks were to be counted. That was to be done the forepart of the ensuing week. When the witness went over to take the count, he found the bricks had been attached as the property of Evans. Had it not been for the attachment, a regular account current would have been settled. The witness understood that Evans was to proceed immediately to cart the bricks to Boston, which he solicited, but the final settlement was not to wait till the bricks were carted, but was to be finished as soon as they were counted.

The defendant was proceeding in his defence, when a ques tion arose, whether the plaintiffs had made out a *primâ facie* case. It being necessary that they should show that they were the sole owners of the property in these bricks, two preliminary questions arose, viz : —

1. Whether by the terms of the contract Evans was inter- ested in the bricks, as joint tenant or tenant in common, when they were made in pursuance of the contract and were fit for market ; —

**2.** If that were so, then whether upon the facts stated, such a sale and delivery had been made by Evans before the attachment, as to divest his interest.

A nonsuit was ordered, subject to the opinion of the whole Court.

*D. A. Simmons* and *Gay* for the plaintiffs. By the terms of the contract Evans was not to have a legal interest in the stock, but only an equitable interest in the profits ; and evidence of usage was admissible to show that this was the " true intent and meaning " of the contract. A sharing of profits does not necessarily constitute a partnership, and even if it did, the partner who furnishes the capital may, with the assent of his co-partner, retain the control of it. *Rice v. Austin,* 17 Mass. R. 206.

The assignment of Hunting & Lawrence passed the whole of the property to the plaintiffs. Admitting that there was a partnership between Hunting & Lawrence and Evans, one partner may assign all the property, on the partnership account, or on his individual account, his co-partner having knowledge of the assignment and making no objection. *Quiner v. Marblehead Soc. Ins. Co.,* 10 Mass. R. 476 ; *Lamb v. Durant,* 12 Mass. R. 54.

The transactions in February 1830, between Evans and the plaintiffs, through Hunting as their agent, amounted to a sale ; and no delivery of the property was necessary, for the plaintiffs were already in possession. *Dawes v. Cope,* 4 Binn. 258 ; *Beaumont v. Crane,* 14 Mass. R. 402 ; *Chapman v. Searle,* 3 Pick. 38 ; *Parks v. Hall,* 2 Pick. 206 ; *Allen v. Smith,* 10 Mass. R. 308 ; *Shumway v. Rutter,* 7 Pick. 56. The case finds a delivery of one load of bricks, and that was a constructive delivery of the whole. *Damon v. Osborn,* 1 Pick. 476.

*Buttrick* for the defendant. The contract of March, 1829, operated as a license to Evans to occupy the brick-yard, and he was in possession and the owner of half of the bricks ; and the plaintiffs had no title as pledgees, mortgagees, or otherwise, which could prevent an attachment of Evans's interest. *Merrill v. Bartlett,* 6 Pick. 46 ; *Allen v. Megguire,* 15 Mass. R. 490 ; *Bonsey v. Amee,* 8 Pick. 236 ; *Butterfield v. Baker,* 5 Pick. 522 ; *Cortelyou v. Lansing,* 2 Caines's Cas. 200.

Evidence of usage is not admissible to explain a contract the construction of which is clear upon the face of it. 2 Stark. Ev. 454. By the terms of the contract of March, 1829, Evans is made owner of one half of the brick; whether as a tenant in common or as a partner, is immaterial, but he seems to have been a tenant in common. *Dob* v. *Halsey,* 16 Johns. R. 40; *Thorndike* v. *De Wolf,* 6 Pick. 120; *Gill* v. *Kuhn,* 6 Serg. & R. 337; Gow on Partn. 1 to 14. If a partner originally, by the failure of Hunting & Lawrence and the assignment of their interest, he became a tenant in common with the plaintiffs. Gow, 282; *Kingman* v. *Spurr,* 7 Pick. 235; *Gallop* v. *Newman,* ibid. 282; *Alvord* v. *Smith,* 5 Pick. 232.

Evans did not part with his interest previously to the attachment. The transaction in February was not a sale, as the bricks remained to be counted, and the quality to be ascertained, and then the final settlement was to be made. 2 Com. Dig. (Day's edit.) *Biens, D* 3; *Parks* v. *Hall,* 2 Pick. 206. That contract is void by the statute of frauds. The statute applies to sales between joint owners, where the vendee is not already in possession. Here the possession was in Evans alone. *Shumway* v. *Rutter,* 8 Pick. 443, and authorities there cited. But if the sale was valid as between the parties, it was not binding on creditors of the vendor. *Lanfear* v. *Sumner,* 17 Mass. R. 110.

*Ashmun,* on the same side, argued that the contract of March 1, constituted a partnership. Gow, 1, 2; 3 Kent's Com. 2.

To the point that the sale in February was not complete, he cited Chit. Contr. 111; *Zagury* v. *Furnell,* 2 Campb. 240; *Hanson* v. *Meyer,* 6 East, 614; *Hinde* v. *Whitehouse,* 7 East, 558; *Whitehouse* v. *Frost,* 12 East, 620; 1 Wheat. 84, note *d.*

WILDE J. delivered the opinion of the Court. It was objected at the trial, that the plaintiffs had not made out a *primâ facie* case, and two questions were thereupon reserved for the consideration of the whole Court.

1. Whether by the terms of the contract between Hunting & Lawrence and Evans, the latter, under whom the defendant claims, was interested in the bricks in question as joint

tenant or tenant in common, when they were made in pursuance of that contract and were fit for market.

2. If that were so, then whether, upon the facts proved, such a sale and delivery had been made by Evans at the time of the defendant's attachment, as to divest his interest.

As to the first question, we are of opinion, that by the terms of the contract, the bricks when made were the joint property of the contracting parties. By this contract Hunting & Lawrence were to furnish the materials for manufacturing the bricks, and to attend to the sale of them ; Evans on his part undertook to manufacture the bricks, to hire and board the laborers employed for that purpose, and to allow Hunting & Lawrence sixty cents per thousand for every thousand of bricks made or clay sold, as rent thereof ; and after all expenses should be paid, then the parties agreed to share the profit and loss, as the case might be, one half each. That this amounts to a complete contract of partnership, cannot, we think, admit of a doubt. Partnership is defined to be a voluntary contract between two or more persons, for joining together their money, goods, labor, and skill, or either or all of them, upon an agreement, that the gain or loss shall be divided proportionably between them. Gow, 2. With this definition the contract in question fully agrees. It contains every essential requisite in a contract of partnership. The parties agreed to join together their property, skill and labor, for the purpose of accomplishing an enterprise, in which they were to have a communion of interest and a communion of profit and loss. The bricks, therefore, when made were their joint property, and when the partnership was dissolved, and Hunting & Lawrence assigned their share to the plaintiffs, the latter became tenants in common with Evans.

The plaintiffs offered to prove, for the purpose of showing that Evans had no property in the bricks, and was only entitled to a share of the proceeds of sale of them when disposed of, that it was usual and customary for the owners of yards, under similar contracts, to retain all in their hands, and account with the makers of the bricks for their share of the profits after the sales were made and proceeds collected.

This evidence was rejected by the judge who presided at the trial, and we think very properly. The usages of trade may be admitted to aid in the construction of doubtful contracts, but the terms of the present contract are by no means doubtful. So far as the question of partnership or of the right of property is concerned, the contract is clearly and explicitly expressed, and the supposed usage, if admitted, could not affect its construction. It would only prove how other parties had considered similar contracts. Indeed, it would hardly prove so much, for if other owners of yards had retained possession of the property there manufactured, it might be by consent, or for the convenience of the parties, and not under the claim of any legal right. Besides, the contract expressly admits that Evans would be entitled to a share of the bricks, and stipulates that Hunting & Lawrence might retain the same as security for any balance which was or might be due from him to them ; so that the evidence of usage, if it were admissible, would be wholly immaterial.

The remaining question is, whether before the attachment by the defendant there was a valid sale from Evans to the plaintiffs. It is objected in the first place, that the contract of sale was not completed, because the bricks had not been counted according to the stipulation between the parties to that effect. And if the counting was intended by the parties to precede the completion of the sale, then undoubtedly the objection must prevail. The evidence, however, does not support this objection, but rather shows that the sale was considered as complete and absolute at the time when the settlement between Evans and the plaintiffs was made ; or at least the jury would be warranted by the testimony of Hunting, to find that such was the intention of the contracting parties. The whole bricks were estimated at 370 thousand. Evans sold his share in the whole and received pay in account, and a balance was due to the plaintiffs which was to be paid for in carting the bricks, so far as that might go. It is true the bricks were to be counted, but that was to be done to enable the parties to come to a settlement of their accounts, and not for the purpose of completing the sale. Taking the whole of Hunting's testimony together, this, we

think, is the reasonable inference to be drawn from it. If the bricks had been actually delivered, there could have been no question that the sale would have been complete, notwithstanding the bricks were to be afterwards counted. The general principle is, that where any operation of weight, measurement, counting or the like, remains to be performed, in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put it in a deliverable state, the contract is incomplete until such operation is performed. Brown on Sales, 44. But where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing or measuring or counting afterwards would not be considered as any part of the contract of sale, but would be taken to refer to the adjustment of the final settlement as to the price. The sale would be as complete as a sale upon credit before the actual payment of the price. Nothing can be found in any of the numerous cases on this point, which militates against this position.

We come, then, to the second objection to the sale, namely, that there was no delivery. In answer to this objection it was said, as Evans agreed to cart the bricks and did actually cart one load after the sale, this may be considered as a delivery of a part under an entire sale, and so according to the authorities would amount to a constructive delivery of the whole. Perhaps this may be so, but we do not think, under the circumstances of this case, that any actual delivery was necessary. The plaintiffs were in fact as much in possession of the bricks as Evans was; he was their agent; the bricks were remaining in their yard, and under the circumstances proved, a delivery would be altogether an unmeaning ceremony. The plaintiffs accepted the bricks, gave orders to Evans to cart them, and in all respects treated them as their property. The sale, therefore, amounted to a transfer, and was so considered by the parties.

Then it was objected, that the sale was void by the statute of frauds ; but as here was a delivery of a part, that alone would take the case out of the statute. But that which took place was equivalent to a delivery of the whole, and there-

fore the statute of frauds can have no application. Whether this sale was void as against creditors, is a question not now to be considered ; nor have we considered the question, whether the plaintiffs, before the sale, had a lien on the brick as security for the balance due them from Evans, since our opinion as to the sale renders this question immaterial. These questions may be raised on another trial, but at present we confine ourselves to the two questions reserved by the report. As to one of these questions, namely, that touching the sale, evidence may be offered by the defendant which may have a material bearing ; but as the evidence is reported, we are all of opinion that the plaintiffs have made out a *primâ facie* case, and the nonsuit must be set aside and a new trial granted.